IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUSSELL GEYSER, | ) | |
| | ) | |
| Plaintiff, | ) | 14-cv-2402 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| RONALD T. MAX, an individual, NET LEASE | ) | |
| PARTNERS, INC., an Illinois Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's motion to dismiss Defendants' Amended Counterclaim is granted [48]. Plaintiff's motion for sanctions [39] is denied.

## STATEMENT

Defendants Ronald T. Max and Net Lease Partners, Inc. (collectively, "Defendants") have filed an Amended Counterclaim before the Court alleging that they should be compensated for management work in connection with the sale of a property in Texas. *See generally* Am. Countercl. Defendants and Plaintiff had a ten-year mutually beneficial business relationship. *See id.* ¶ 10. This business relationship consisted of agreements, both written and oral, between Defendants and Plaintiff (and his business entities); in particular, these agreements granted Defendants interests in entities under the Plaintiff's Gibraltar Holdings umbrella. *See id.* ¶ 11.

From March 2006 through January 2009, Defendants performed asset management services for Gibraltar Property Management, Inc., a company owned by Plaintiff. *See id.* ¶ 13. Gibraltar Property Management provides asset management, brokerage services, and negotiation support for the sale of Plaintiff and Gibraltar Holdings, LLC's real estate holdings. *See id.* ¶ 14. Among other properties, Gibraltar Property Management held a tenancy in common in Gibraltar Woodbridge, LLC ("Woodbridge"). *See id.* ¶ 13.

The asset management services that Defendants performed in connection with the Woodbridge property encompassed: (1) communicating with Tenants in Common ("TIC"), an investor group working with Gibraltar Property Management, and acting as a point of contact for TIC investors, *see id.* ¶¶ 15–16; (2) preparing Quarterly Reports comprising summary updates of income, concessions, write-offs, vacancy, market rents, operational issues, outlook, and operational costs, and explaining these Quarterly Reports to investors, *see id.* ¶¶ 17–18; (3) preparing Annual Reports which synthesized the Quarterly Reports, *see id.* ¶ 19; (4) supervising and coordinating onsite managers, leasing, maintenance, lawn care, and the drafting and negotiating of leasing agreements to protect investor interests, *see id.* ¶ 20; (5) setting market

1

rents for the apartments, *see id.* ¶ 21; (6) overseeing budgeting, including the determination of cash flow through rents, prioritizing investment in property through capital repairs, performing apartment renovation, landscaping, resurfacing of parking lots, painting exteriors, and the like, *see id.* ¶ 22; (7) obtaining and renewing property and liability insurance coverage for the Woodbridge property, *see id.* ¶ 23; and (8) speaking with Plaintiff and other owners and partners of Gibraltar Property Management to obtain their approval for decisions regarding Woodbridge, *see id.* ¶ 24.

On December 11, 2012, Woodbridge was sold to a third party. *Id.* ¶ 25. Defendants believed they would be compensated out of the proceeds of that sale for the asset management work they performed. *Id.* ¶ 26.

As a procedural matter, this Court previously dismissed Defendants' Counterclaim without prejudice because it was barred by the Texas Occupational Code. *See* Tr. 12/16/14 Mot. Hearing 5 (dismissing Defendants' Counterclaim because they performed property management "in anticipation of being compensated for the sale negotiation.") (quoting Defs.' Counterclaim ¶ 14). The Court permitted Defendants to replead a counterclaim, though it cautioned the Defendants to consider whether they wanted to actually replead. *See id.* 7.

**I. Motion to Dismiss**

Plaintiff moves to dismiss Defendants' Amended Counterclaim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the purposes of a Rule 12(b)(6) motion to dismiss, "a court must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 663. This standard also applies to counterclaims. *See Costello v. BeavEx Inc.*, No. 12 C 7843, 2013 WL 2156052, at *1 (N.D. Ill. May 17, 2013).

**A.    Brokerage Services**

As an initial matter, Plaintiff argues that Defendants have essentially repleaded the same claim that the Court previously dismissed. But the Court must construe the Amended Counterclaim in Defendant's favor, and in doing so, does not believe Defendants have simply repleaded their earlier claim. Here, Defendants add additional allegations further defining and clarifying the nature of the asset management services they provided, ranging from preparing quarterly reports to drafting rental contracts to landscaping. *See* Am. Countercl. ¶¶ 15–24.

Plaintiff argues that Defendants' Amended Counterclaim still runs afoul of Texas law because it still alleges brokerage services, for which Defendant's cannot recover, under Texas law without being licensed real estate brokers. *Accord* Tex. Occ. Code Ann. § 1101.806(b) (individual cannot recover for brokerage services unless he pleads and proves he is an attorney or a licensed real estate broker in Texas); *with* Tex. Occ. Code Ann. § 1101.002(1)(A) (listing the services constituting brokerage).

But Plaintiff cites no authority for the proposition that services of the kind that Defendants allegedly performed (and now delineate more fully) fall under Section 1101.002(1)(A). Defendants still claim that they provided asset management services "in anticipation of being compensated from the sale proceeds" of Woodbridge, *see* Am. Countercl. ¶ 14, but they no longer plead that they are seeking compensation for "negotiation" of the sale of real estate, namely, that "[o]n or about December 11, 2012 Max and Net Lease were successful in their efforts to negotiate a lucrative sale of the Woodbridge property." *See* Countercl. ¶¶ 14, 16.

Given the context of the case, the Court could, of course, infer that the more fully described activities in the Amended Counterclaim were performed in preparation for the negotiation or sale of Woodbridge. But the Court must construe the Amended Counterclaim in Defendants' favor and, again, in doing so, the Amended Counterclaim alleges that Defendants performed only *ancillary* services managing Woodbridge, for which they were expecting to be compensated from Woodbridge sales proceeds.

Importantly, Plaintiff cites no case holding that the connection between the source of the funds and work performed is sufficient to bring Defendants' delineated asset management services under the purview of Section 1101.002(1)(A). Indeed, Section 1101.002(1)(A) does not explicitly list any of the Defendants' activities, and there is reason to think that Texas courts would construe Defendants' activities as falling outside of Section 1101.002(1)(A). *See Ryland Enter., Inc. v. Weatherspoon*, No. 01-10-00715-CV, 2012 WL 6754966, at *9 (Tex. App. Dec. 28, 2012) (requiring activities to fall explicitly into a statutory category under Section 1101.002(1)(A) to constitute brokerage services).

### B. *Quantum Meruit* and Express Contractual Remedy

But Plaintiff advances another argument—that Defendants' *quantum meruit* counterclaim is not properly pleaded as a counterclaim because it is brought only in the alternative to the original contract between the parties. *See* Pl.'s Reply 4 (quoting Defs.' Mem. Opp'n 3); *see also* Am. Countercls. ¶ 9. This argument has more purchase.

It highlights a defect with the *quantum meruit* counterclaim: it is pleaded for services covered by an express contract. "As a general rule, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in *quantum meruit* only when there is no express contract covering those services or materials." *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988).[1] The Amended Counterclaim alleges that a

---

[1] "There are instances when recovery in quantum meruit is permitted despite the existence of an express contract that covers the subject matter of the claim . . . . First, recovery in quantum meruit is allowed when a plaintiff has partially performed an express contract but, because of the *defendant's* breach, the plaintiff is prevented from completing the contract . . . . [Second], when a plaintiff partially performs an express contract that is unilateral in nature . . . . [Third] building or construction contracts . . . . [where] the owner's acceptance and retention of the benefits aris[es] as a direct result of the contractor's partial performance." *See Truly*, 744 S.W.2d at 937 (emphasis in original). None of these exceptions appear to apply here.

May 18, 2006, contract memorialized the extent of the agreements for asset management services between the parties. *See* Am. Countercl. ¶¶ 11–12 (citing Pl.'s Compl., Ex. A.). Consequently, under Texas law, Defendants cannot maintain their *quantum meruit* counterclaim. Defendants' Amended Counterclaim is dismissed with prejudice.[2]

## II. Motion for Sanctions

Plaintiff also moves for sanctions under Rule 11. Under Rule 11, "[b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1). A court may impose sanctions if a plaintiff fails to make a proper prefiling inquiry of the law or facts. *See Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999).

Plaintiff contends that Defendants' Amended Counterclaim is again barred by the Texas Occupational Code, that Plaintiff advised Defendants of this issue before Defendants filed their Amended Counterclaim, and that, nevertheless, Defendants still chose to file. *See* Pl.'s Mot. Sanctions 3; *see also id.* Ex. A, 7/21/14 Email from Keith Cochran to Kenneth Fitzgerald, ¶ 2 (informing Defendants' counsel).

But the Court has found that Defendants' Amended Counterclaim does not fall afoul of Texas Occupational Code in the same manner as before, as detailed above. Defendants, relying on *Ryland Enterprise, Inc.*, 2012 WL 6754966, at *9, could have reasonably believed that their amended allegations were not brokerage services for which they could not recover under Texas law. Plaintiff's motion for sanctions is denied.

## III. Conclusion

For the reasons provided herein, Plaintiff's motion to dismiss Defendants' Amended Counterclaim is granted [48]. Plaintiff's motion for sanctions [39] is denied.

**Dated: 4/1/2015**                                **/s/John Z. Lee**
                                                    **U.S. District Judge**

---

[2] To the extent Defendants are trying to preserve an unjust enrichment claim here, they have done so; it is pleaded as an affirmative defense. *See* Defs.' Answer 6.